OPINION
{¶ 1} Plaintiffs-appellants/cross-appellees Jerry and Shirley Jones (the Joneses) and defendants-appellees/cross-appellants Raymond Bridgeland and Bonnie Lias both appeal the decision of Carroll County Common Pleas Court. Bridgeland and Lias appeal the trial court's decision that enjoined them from placing motor vehicles, personal property and other debris in the roadway of Capper Drive. The Joneses appeal the trial court's decision stating that they cannot place a driveway at the end of Capper Drive. Two issues are raised in this appeal. The first issue is whether Bridgeland can exclude people from traveling on the portion of Capper Drive that runs through his property. The second issue is whether the dead end nature of Capper Drive prohibits an access point to the 30 acre parcel of land that the Joneses own. For the reasons expressed below, the judgment of the trial court is affirmed in part, reversed in part and judgment is entered in favor of the Joneses.
 STATEMENT OF FACTS {¶ 2} The Joneses, Bridgeland, and Lias own parcels of land in Piney View Allotment No. 3, Carroll County, Ohio. Piney View Allotment No. 3 (platted in 1961) consists of seventeen lots of land divided by a 30 foot street, known as Capper Drive. Capper Drive runs east to west with eight lots located on the south side of the street and nine lots located on the north side of the street. The western end of Capper Drive intersects with Thrasher Drive. The eastern end of Capper Drive dead ends. Capper Drive does not have a cul-de-sac, rather it just ends. Capper Drive is entirely located in Union Township, Carroll County.
 {¶ 3} Bridgeland owns lots 92-95; lots 92 and 93 are on the south side of Capper Drive, while lots 94 and 95 are on the north side. These lots are located on the eastern end of Capper Drive, i.e. at the dead end. The eastern border of lots 93 and 94 align with the dead end of Capper Drive. Lots 92 and 93 were acquired in 1975. Lots 94 and 95 were acquired in 1980.
 {¶ 4} Lias owns lots 90 and 91. These lots are located west of Bridgeland's lot 92. Lot 91 was acquired in 1966. Lot 90 was acquired in 2003.
 {¶ 5} The Joneses own lots 100 and 101 in Piney View Allotment No. 3. These two lots are located on the western end of Capper Drive at the intersection of Thrasher Road. These lots were acquired in 2001. The Joneses also own a 29.38 acre parcel of land (referred to as a 29 acre tract of land) that abuts to the Capper Drive dead end and Bridgeland's lots 93 and 94. Thus, Capper Drive actually dead ends into the 29 acre tract of land that is owned by the Joneses. This 29 acre tract of land was acquired in 1997.
 {¶ 6} The Joneses 29 acre tract of land has a vehicular access point off of Azalea Road. Capper Drive does not provide a clear vehicular access point to the 29 acre tract of land. When the Joneses were looking at that tract of land in 1997, they accessed the property from Capper Drive and also from Azalea Road. However, after they bought it they only entered the property from Azalea Road. That changed in 2001 when they bought the Piney View lots. The Joneses then tried to access the property from Capper Drive. While they could walk down Capper Drive and access the 29 acre tract of land, they could not drive the entire length of Capper Drive with a vehicle or tractor. Debris and other personal property of Bridgeland and Lias, including a dump truck, was located in the drive.
 {¶ 7} Wanting to access their property from Capper Drive, the Joneses asked Bridgeland to move the personal property. Bridgeland refused.
 {¶ 8} As a result, the Joneses filed a complaint in the Carroll County Common Pleas Court claiming nuisance and requesting injunctive relief. Bridgeland and Lias answered the complaint claiming that Capper Drive was a private street. They claimed it was abandoned by Union Township. Furthermore, they claimed that Capper Drive was only to be used by the Piney View Allotment land owners and was not intended to be an access point for the 29 acre tract of land that abutted it.
 {¶ 9} The case proceeded to a bench trial on June 28, 2005. After hearing all the testimony, the trial court issued a judgment. It found that Capper Drive was platted and the road was dedicated to public use forever. Thus, the road was not abandoned by the Township. The trial court also noted that while the plat was accepted, it was never approved. And, it has never been a true public road in terms of maintenance responsibility. Further explaining the public nature of the road the trial court added:
 {¶ 10} "Public use means just that, that it can be traversed for purposes of ingress and egress mechanically and I'm referring to motorcycles, ATV's, automobiles or by foot, by anyone but it is also clear that as dedicated and approved by the Board of County Commissioners, Capper Drive was a dead-end thoroughfare. * * * [N]o lot owner has the right to unilaterally block the road."
 {¶ 11} Thus, the trial court granted the Joneses' request for injunctive relief. However, in doing so, the trial court also made statements that Capper Drive does not provide them vehicular access to their 29.38 acre tract of land.
 {¶ 12} "Capper Drive has a specific beginning as dedicated, off of what is now identified as Thrasher Road, and it has a definite terminus at its East end which is at the East end of Lots 93 and 94 which is the end of the subdivision, so that people can pass and re-pass to that point only; as ludicrous as that may seem to Plaintiffs, that does not permit them to open the East End of Capper Drive to serve as access to their property. The court has no jurisdiction to recognize that point of entry or to sanction that access.
 {¶ 13} "* * *
 {¶ 14} "Vehicular traffic stops at the boundary line and if somebody wants to cross the boundary line on foot, that's their business, and I guess Plaintiffs' business. It was platted as a dead-end road and that's exactly what the court finds it to be today."
 {¶ 15} The Joneses appeal the trial court's ruling finding fault with its indication that they cannot access their 29.38 acre tract of land with a vehicle by Capper Drive. Bridgeland and Lias cross-appeal finding fault with the trial court's determination that Capper Drive is open to the public. For ease of discussion, the cross-assignment of error will be addressed first.
 CROSS-ASSIGNMENT OF ERROR {¶ 16} "WHETHER THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN GRANTING JUDGMENT FOR THE PLAINTIFFS, JERRY AND SHIRLEY JONES?"
 {¶ 17} Bridgeland and Lias contend that the trial court erred in holding that Capper Drive is open for public traversing and that they have no right to exclude people from traveling the entire length of the street. Their first argument is that Capper Drive is not public because it has never been "accepted."
 {¶ 18} The platting statutes reference two terms: "approval" and "acceptance of the dedication of any public street." In the situation, as here, where the subdivision being platted is located outside of a municipal corporation, R.C. 711.041 applies. This statutes states:
 {¶ 19} "No plat certifying lands outside a municipal corporation may be recorded without the approval thereon of the board of county commissioners of the county wherein such lands are situated.
 {¶ 20} "The approval of a plat by the board of commissioners shall not be deemed to be an acceptance of the dedication of any public street, road or highway dedicated on such plat.
 {¶ 21} "This section does not apply to such plats as are required by section 711.09 or 711.10 of the Revised Code to be approved by a planning commission." R.C. 711.041.[1]
 {¶ 22} In the instant matter, there is no dispute that the Piney View Allotment No. 3 plat, which included Capper Drive, was approved. The plat was recorded in 1961. Furthermore, the recorded plat contains a notation that states "Approved by Carroll Co. Commissioners Oct. 30th, 1961." Approval vests the county with an interest in the property that has been designated as a street and/or highway. See R.C. 711.07 (stating that upon recordation, fee simple of lands designated for roads and streets on the plat passes to the municipal corporation); R.C. 5553.31
(discussing dedication, acceptance and approval of land for county roads outside municipalities).
 {¶ 23} The recorded plat also indicates that Capper Drive was dedicated for public use. Dedication in simple terms "is a voluntary and intentional gift or donation of land, or of an easement or other interest therein, for some public use, made by the owner of the land." Snyder v. Monroe Twp. Trustees (1996),110 Ohio App.3d 443. The plat states:
 {¶ 24} "Known all men by these presents that the property owner of this allotment, shown on this Plat, do hereby acknowledge the making of the same to be our free act and deed and hereby dedicate the roads or street to public use forever."
 {¶ 25} This language is a clear dedication that the lands designated as streets or roads are vested to the county for the purpose of being public streets and roads. However, as R.C.711.041 indicates, approval of the county is not deemed an acceptance of the dedication.
 {¶ 26} In the matter before us, both parties admit (and the record does not indicate otherwise) there has not been acceptance of the dedication. Since no acceptance has been given, the decision over whether the trial court correctly determined that Bridgeland and Lias could not preclude people from using the portion of Capper Drive that affronts their property because the road was a public road, rests on what implications the lack of acceptance has on a road that has been approved and dedicated as a public road.
 {¶ 27} In 1993, the Supreme Court discussed the implications of approval and acceptance for situations involving municipal corporations. Eggert v. Puleo (1993), 67 Ohio St.3d 78, 84, the court stated:
 {¶ 28} "Even though the municipal corporation holds the fee of the land upon which the street is to be built upon approval and recording of the plat, the land is still in the care and control of the developer until the street is completed in accordance with specifications set forth in the plat. Theproposed street does not become a public street until the streetis accepted by the municipal corporation. It is at that point,upon acceptance, that the care, supervision, and control of thestreet become the responsibility of the municipal corporation.
(See R.C. 723.01.) Prior to acceptance by the municipal corporation, the street is not a public street, but is only a proposed public street.
 {¶ 29} "It is thus evident that the concepts of `approval' and `acceptance' have very specific, and very different, meanings in the platting statutes. Along with the platting, the approval and the acceptance probably constitute the three most important events which must each occur before a proposed roadway finally becomes a public street. As was explained previously, pursuant to R.C. 711.07 the approval of the plat and the subsequent recording pass fee ownership." (Emphasis added).
 {¶ 30} The word public in reference to acceptance does not refer to who can traverse the street. The words "public" and "proposed public" in this situation refers only to whom the care and maintenance of the street falls upon. See State ex rel.Strategic Capital Investors, Ltd. v. McCarthy (1998),126 Ohio App.3d 237, 246 (dealing with land outside municipality); 1976 Ohio Atty.Gen.Ops. No. 76-014. See, also, 35 Ohio Jurisprudence 3d (2002) 173, Dedication, Section 65. A "public" street means that maintenance and control of the street is done by the county or township (whoever R.C. Chapter 5553 dictates). A "proposed public" street means that the general maintenance of such street remains a private matter for abutting landowners until acceptance is had. 1976 Ohio Atty.Gen.Ops. No. 76-014. It is upon acceptance that a road becomes a county or township road which is maintained by the county or township. Id.
 {¶ 31} However, the lack of acceptance does not negate the previous dedication or approval. The offer of dedication is deemed to stand unless it has been revoked or unless the offer of dedication contains a specific time limit. See 35 Ohio Jurisprudence 3d (2002) 150, Dedication, Section 43. Here, there is nothing in the record to indicate revocation and there is no fixed time period for acceptance.
 {¶ 32} Moreover, as stated earlier, approval vests the county with an interest in the property that has been designated as a street or highway. See R.C. 711.07 (stating that upon recordation fee simple of the lands designated for roads and streets on the plat passes to the municipal corporation); R.C. 5553.31
(discussing dedication acceptance and approval of land for county roads outside of municipalities). See, also, Eggert,67 Ohio St.3d at 84 (stating, "approval of the plat and subsequent recording pass fee ownership"). Thus, the county has an interest in the land for use as a street and that land is open for public travel.
 {¶ 33} Consequently, the fact that acceptance of the dedication of Capper Drive has not occurred, does not in any way allow Bridgeland and/or Lias to block or hinder a landowner abutting the street, i.e. the Joneses, from using the entire length of the street. Id. The valid approval and dedication deem that the land is open to public traversing.
 {¶ 34} Furthermore, as the 1976 Ohio Atty.Gen.Ops. No. 1976 76-014 explains:
 {¶ 35} "The Court in Krzewinski [v. Eaton Homes (1958),108 Ohio App. 175, 179] concluded that where an owner of land causes a map to be made of the land (upon which are delineated streets and highways) and then sells the lots by use of the map referring to it in the conveyance, one who purchases a lot from the seller acquires from the seller the right to have the street upon which his land abuts open for travel throughout the length of the street (as shown on that map)."
 {¶ 36} Thus, the Joneses have a right to traverse the entire length of the street as landowners abutting Capper Drive. Id. Consequently, Bridgeland and Lias's argument that the county's lack of "acceptance" of Capper Drive means that the street is private and they are permitted to prevent the public and the Joneses from traversing the entire length of the road fails. Their first argument lacks merit.
 {¶ 37} Next, Bridgeland and Lias argue that the portion of Capper Drive that abuts Bridgeland's property is "unopen," (i.e. grassy and difficult to tell where the road lies), and thus is inaccessible to the public. According to Bridgeland and Lias, the "unopened" nature of the road means that Bridgeland is free to alienate anyone he wants from using this property. They citeBachman v. Shreve (Mar. 24, 1982), 7th Dist. No. 547, in support of their proposition.
 {¶ 38} Bachman is distinguishable from the case at hand. It discusses unopened and undedicated streets. The opinion specifically states that there was not a formal dedication or acceptance of the streets. In the case at hand, while we do not have an acceptance, the plat specifically indicates that the streets and roads shown on it were dedicated "to the public use forever." Furthermore, both Bridgeland and Lias acknowledged that when they bought the land they knew of Capper Drive running through their property. Thus, they were aware of the nature of this 30 foot street and its relationship to their property.
 {¶ 39} Moreover, as aforementioned, in 1976 Ohio Atty.Gen.Ops. No. 76-014, landowners abutting a street that has not yet been accepted, but a clear intention to dedicate is shown, all landowners abutting have the right to travel the entire length of the street without obstruction. The fact that the remainder of Capper Drive was unopened does not affect that determination. When the land was bought by all the parties, the plat was recorded and showed Capper Drive extending to the eastern most boundaries of lots 93 and 94. Thus, persons owning land in Piney View Allotment No. 3 have the right to traverse the entire length of the street regardless of its unopen nature.
 {¶ 40} Consequently, Bridgeland's and Lias's second argument also fails. The trial court's grant of an injunction in favor of the Joneses was not in error. The cross-appeal lacks merit.
 ASSIGNMENT OF ERROR {¶ 41} "THE TRIAL COURT ERRED IN ISSUING A JUDGMENT PROHIBITING APPELLANTS' ACCESS FROM THEIR PROPERTY ONTO THE PUBLIC ROAD KNOWN AS CAPPER DRIVE WHICH ABUTS APPELLANTS' PROPERTY."
 {¶ 42} In the trial court's judgment entry, it found that Capper Drive was platted as a dead end street. Pursuant to that fact, the trial court reasoned:
 {¶ 43} "That's to say the Court has no jurisdiction to recognize that point of entry or to sanction that access. If the Board of Commissioners chooses to alter the plat or amend the plat or vacate the plat or provide some other alteration to the plat, that's within their jurisdiction and you will have to seek your remedy through them." (Tr. 174-175).
 {¶ 44} Thus, the trial court determined that while the Joneses have the right to drive a vehicle down the entire length of Capper Drive, they do not have the right to enter the 29 acre tract of land by vehicle from Capper Drive.
 {¶ 45} During oral argument, Bridgeland and Lias conceded that if we affirm the trial court's ruling that Capper Drive is open for public traversing, then the trial court's determination that the Joneses could not use Capper Drive as an access point to the 29 acre tract of land was in error. We agree.
 {¶ 46} Allowing the Joneses to access the 29 acre tract of land from Capper Drive does not alter the nature of Capper Drive. It still remains a dead end street. If the Joneses want to extend a private drive to a house on the 29 acre tract of land, they are permitted to since they are not altering or extending the road. As long as the Joneses do not change the nature of the road then they are permitted to access their property through a private drive from Capper Drive. That said, if they would try to subdivide the property and develop it, that action would change the nature of Capper Drive. This could only be done by either extending Capper Drive or having roads extend from it. Any action to alter or change the road could not be accomplished without the approval of the Commissioners. See Chapter R.C. 5553.
 {¶ 47} Accordingly, the Joneses are permitted to access their 29 acre tract of land from Capper Drive as limited by the preceding paragraph. Therefore, the assignment of error has merit.
 {¶ 48} For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. The trial court's grant of injunctive relief for the Joneses is affirmed. The trial court's mandate that the Joneses cannot use Capper Drive as a vehicular access point for their 29 acre tract of land is reversed. The Joneses are permitted to access their property from Capper Drive and are permitted to place a private drive off of Capper Drive for ingress and egress to their private property. Accordingly, judgment is entered in favor of the Joneses.
Donofrio, P.J., concurs.
Waite, J., concurs.
[1] This statute has been in effect since 1955 and has not been changed.